UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY LAMARR COCHRANE,

                Petitioner,                      Case No. 09-10589
                                                        Honorable David M. Lawson

v.

CARMEN PALMER,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Tony Lamarr Cochrane, presently confined at the Michigan Reformatory in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted following a bench trial in the Oakland County, Michigan circuit court of assault with intent to commit murder, felonious assault, second-degree child abuse, discharge of a firearm in a building, domestic assault, assault and battery, and four counts of possession of a firearm in the commission of a felony. He was sentenced to several concurrent prison terms topping out at thirty to fifty years, plus consecutive terms of two years for each of the firearm convictions. The charges stem from the defendant's shooting rampage in his own apartment in which his wife was shot while his children were present. The petitioner alleges that his due process right was violated when the prosecutor charged him with additional crimes after he refused to plead guilty to the original charges, he did not knowingly and voluntarily waive his right to a jury trial, and the state trial court improperly departed above the sentencing guidelines range by using factors which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner. The

-1-

respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted

and lack merit.  The Court agrees that petitioner's claims are meritless and will deny the petition.

I.

The Michigan Court of Appeals summarized the pertinent facts, which are set forth here:

> Defendant lived in an apartment in Oak Park with his wife, Julie Cochrane, and their two children.  As a result of his service with the United States Army in Desert Storm in 1991, defendant suffered from posttraumatic stress disorder. Defendant had been using Tylenol-3, Tylenol-4, Soma, and illegally obtained Xanax. Between 9:30 and 10:30 a.m. on February 13, 2005, Julie arrived home after working a midnight shift at a post office.  Defendant and the children were all in the apartment when Julie arrived. Defendant and Julie got into a lengthy argument, lasting several hours. Defendant struck Julie and the younger child during the course of the argument. Defendant claimed that, after striking Julie and the younger child, he took some Xanax, Soma, and Tylenol-3.  Then defendant sent the older child to the store to purchase cigarettes.

> Shortly thereafter, defendant shot Julie, who was seated, seven times with a semiautomatic SK-47 assault rifle.  Julie sustained gunshot wounds in her left shoulder, left elbow, right arm, hip, and midsection.  Julie was in the hospital until March 9, 2005, when she was transferred to a rehabilitation facility, where she recovered until April 5, 2005.  At the time of trial, Julie was waiting until her internal injuries had finished healing before she could undergo shoulder and elbow replacement surgeries.  Defendant testified at trial and admitted that he shot Julie, but denied that he intended to kill her.  Although defendant claimed he was an expert marksman, he indicated that he did not shoot to kill Julie because he was not focused on what he was doing.  Rather, defendant claimed that he had been in a "haze" from the drugs and snapped out of it after he shot her and everything became clear.

> After shooting Julie, defendant approached the younger child, who was in his bedroom, pointed the gun at him, and asked him if he had any questions.  The younger child shook his head, and defendant turned the gun on himself and fired. Defendant fired two bullets toward his head and one toward his chest, fully aware that the younger child was watching him.  At least one of these gunshots actually hit defendant, and he received treatment.  One of the bullets went into the ceiling, into an occupied apartment.  Defendant admitted at trial that he intentionally fired the rifle in the younger child's room, knowing that there was an occupied apartment upstairs. In fact, Naomi Ashford, the upstairs neighbor, was sitting in her bedroom studying when the bullet came through the floor and landed in her ceiling. Defendant threw the gun aside and went to help Julie, and the younger child called the police.

-2-

Julie told the police that defendant had tried to kill her, and defendant admitted to two police officers that he had shot Julie. The police indicated that blood and body tissue were on the walls, ceiling, and floor throughout the apartment. The police discovered a bullet hole in the ceiling of the younger child's bedroom and, in the upstairs apartment, they found a matching bullet hole in the floor and located a bullet lodged in the ceiling. . . .

Defendant was charged with assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84 (as an alternative to the assault with intent to commit murder charge), felony-firearm, MCL 750.227b, domestic assault MCL 750.81(2), and assault and battery, MCL 750.81(1). On May 5, 2005, at the time set for the preliminary examination, defendant conditionally waived his right to a preliminary examination and indicated that he would enter either a guilty or no contest plea. The prosecutor explained that, if defendant failed to do so, either party would be free to request a remand for a preliminary examination. Defense counsel acknowledged that there were additional charges the prosecutor could bring and that there was a benefit to waiving the preliminary examination. The district court found that defendant's waiver was knowing and voluntary and bound the case over to the circuit court on all five charges. The prosecutor then filed a felony information, identifying the same charges as the felony complaint.

On May 12, 2005, the date scheduled for the arraignment before the circuit court, the prosecutor stated his intent to dismiss the assault with intent to do great bodily harm charge. Defendant was not ready to enter a guilty or no contest plea at that time, and the prosecutor stated that, if he failed to plead as agreed at the next pretrial hearing, the prosecutor intended to request a remand to the district court to add additional charges. At a pretrial hearing on June 2, 2005, defendant explained that he was not willing to enter a guilty or no contest plea and wished to request a preliminary examination. Defense counsel explained that this decision was against his advice. Both parties requested a remand to the district court. The circuit court entered an order remanding the case to the district court for a preliminary examination. The prosecutor filed an amended complaint, adding charges of felonious assault, MCL 750.82, second-degree child abuse, MCL 750.136b(3), discharge of a firearm in a building, MCL 750.234b, and three additional counts of felony-firearm, MCL 750.227b. Following a preliminary examination on June 9, 2005, the district court bound defendant over to the circuit court on all counts. The prosecutor filed a new felony information, identifying the same charges as the amended complaint.

At a subsequent pretrial hearing, defendant waived his right to a jury trial. Under oath, defendant stated that he was 40 years old, was literate, had a 12th grade education, and was able to hear and understand the trial court and his attorney. Defendant agreed that he understood the pending charges, and he assented when

-3-

asked if he understood that he had the right to a trial by jury of 12 and a unanimous verdict. Defendant stated that he understood the difference between a jury trial and bench trial, specifically, that the judge would be the only decision maker at a bench trial. The circuit court found that defendant had "knowingly, voluntarily and understandingly waived his right to a jury. . . ."

*People v. Cochrane,* No. 267151, 2007 WL 2811540, at *1-2 (Mich. Ct. App. Sept. 27, 2007)

(footnote omitted). The petitioner's convictions were affirmed on appeal, and the state supreme

court denied leave to appeal. *Ibid., lv. den.* 480 Mich. 1075, 744 N.W.2d 145 (2008).

The petitioner filed a petition for a writ of habeas corpus on February 17, 2009. The

petitioner raised the following three grounds for habeas corpus relief, each of which were addressed

by the state appellate court:

> I.     The prosecution violated pet[itioner]'s due process rights by punishing for exercising const[itutional] right to trial where as additional charges was added when pet[itioner] decline to plead guilty/ineffective assistance of counsel for failing to object.
>
> II.    Petitioner waiver of a jury trial was not voluntary and violated due process.
>
> III.   The pet[itioner']s due process was violated when the trial court used additional facts not a matter of record to enhance sentencing.

Ptn. at 4, 6, 7. The warden filed a response in opposition.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering an application for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See*

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal

court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved

-4-

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court

has explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review.  In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475

F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner first alleges that he was denied his right to due process by the prosecutor's vindictiveness in charging him with additional criminal offenses after the petitioner declined to plead guilty or no contest to the original charges that had been filed against him.

The respondent argues that the petitioner procedurally defaulted his first claim, as well as his remaining claims, by failing to object at trial. The petitioner contends that his lawyer was ineffective by failing to object. A federal habeas court need not decide whether an issue is procedurally defaulted before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003)). The Court therefore will proceed to address the merits of the petitioner's claims. The Court need not discuss the claim of ineffective assistance of counsel because the petitioner has not raised it as an independent claim for relief, and the Court's consideration of the merits of the underlying claim obviates the need to consider cause for the failure to object.

It is "'patently unconstitutional'" for a prosecutor to pursue a course of action whose objective is to penalize a criminal defendant's reliance on his protected statutory or constitutional rights. *See United States v. Goodwin*, 457 U.S. 368, 372 n.4 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). "A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted." *United States v. Anderson*,

-7-

923 F.2d 450, 453 (6th Cir. 1991). Therefore, "a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited." *Bragan v. Poindexter,* 249 F.3d 476, 481 (6th Cir. 2001) (citing *United States v. Adams*, 870 F. 2d 1140, 1145 (6th Cir. 1989)).

However, the Due Process Clause does not prohibit a prosecutor from carrying out a threat made during plea negotiations to bring additional charges against a criminal defendant who refuses to plead guilty to the offenses for which he was originally charged. *Bordenkircher*, 434 U.S. at 363. When negotiating a guilty plea agreement, "there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Ibid.* In *United States v. Goodwin*, the Supreme Court commented:

> In declining to apply a presumption of vindictiveness, the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation — in often what is clearly a "benefit" to the defendant — changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment — from which the prosecutor embarks on a course of plea negotiation — does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin,* 457 U.S. at 378-80. Therefore, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83.

The Sixth Circuit has consistently held that the pretrial addition of criminal charges against a defendant after he refuses to plead guilty does not amount to vindictive prosecution. *See, e.g.*, *United States v. DeJohn,* 368 F. 3d 533, 545 (6th Cir. 2004); *United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002). Indeed, a prosecutor may hold some potential charges in abeyance as an

-8-

inducement during plea bargain negotiations without being considered vindictive, as long as the additional charges are supported by probable cause. *See United States v. Suarez,* 263 F.3d 468, 480 (6th Cir. 2001).

Nonetheless, a criminal defendant may prove prosecutorial vindictiveness by one of two methods. First, a defendant may demonstrate "actual vindictiveness" by establishing "through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Bragan,* 249 F.3d at 481 (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (citing *Goodwin*, 457 U.S. at 380-81, 384 & n.19)). That showing, however, is "exceedingly difficult to make." *Ibid.* (quoting *Meyer*, 810 F.2d at 1245). Second, a defendant may show that there existed a "'realistic likelihood of vindictiveness'" in the prosecutor's actions in the defendant's particular case. *Ibid.* (quoting *United States v. Andrews,* 633 F.2d 449, 453 (6th Cir. 1980). "A court may only presume an improper vindictive motive when a reasonable likelihood of vindictiveness exists." *Ibid.* (citing *Goodwin*, 457 U.S. at 373). A habeas petitioner must show that (1) the prosecutor had "some 'stake' in deterring the petitioner's exercise of his rights, and (2) the prosecutor's conduct was somehow 'unreasonable.'" *Id.* at 482 (quoting *Anderson*, 923 F.2d at 453-54).

The state court of appeals concluded that the petitioner did not establish a due process violation, commenting that "[t]he record reveals no evidence that the prosecutor expressed any hostility or threats to suggest that defendant was deliberately punished for exercising his right to a preliminary examination and ensuing trial, and the additional charges were in the prosecutor's charging discretion." *Cochrane*, 2007 WL 2811540, at *3. The Court agrees. The petitioner has not shown that he was the victim of prosecutorial vindictiveness in this case. The petitioner initially

agreed to waive his preliminary examination on the original five criminal charges with the understanding that he would plead guilty or no contest in the circuit court. At the time of the preliminary examination, counsel for the petitioner stated on the record that additional criminal charges could have been brought against the petitioner. The prosecutor indicated that if petitioner failed to plead guilty or no contest in the circuit court, either party could request a remand for a preliminary examination. After the petitioner chose not to plead guilty or no contest at either pretrial hearing, the prosecutor sought a remand to the district court for a preliminary examination. The prosecutor then filed an amended complaint, adding charges of felonious assault, second-degree child abuse, discharge of a firearm in a building, and three additional counts of felony-firearm. The prosecutor did not act improperly in charging the petitioner with additional criminal offenses after the petitioner declined to plead guilty or no contest to the original charges. The petitioner has failed to show that his counsel was ineffective for failing to object to these additional charges or that he was deprived of his Fourteenth Amendment due process rights due to prosecutorial vindictiveness.

### B.

The petitioner next contends that he did not voluntarily waive his right to a jury trial. A knowing and intelligent waiver of a constitutional right to a jury trial occurs "where the defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge. . . .'" *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004) (quoting *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990) (internal quotation omitted)). The petitioner has the burden of demonstrating that his waiver of a jury trial was invalid. *Sowell*, 372 F.3d at 831. "Although recommended, there is no federal constitutional requirement that a court conduct an

-10-

on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002); *see also Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) (holding that neither an oral colloquy nor any other particular form of waiver is required for a valid waiver of jury trial as a matter of federal constitutional law). Furthermore, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F.3d at 370 (internal quotation omitted).

The petitioner's appellate counsel filed a motion to remand to the trial court for an evidentiary hearing on this issue. He attached an affidavit from the petitioner that averred that the petitioner did not voluntarily waive his right to a jury trial because his trial counsel had advised him that the trial court would "slam" him at sentencing if the petitioner elected to a trial by jury. Appellate counsel also attached a letter from the petitioner's trial counsel to his first appellate counsel, in which trial counsel stated that it was the petitioner's idea to have the case tried by the judge without a jury and that counsel had seconded the petitioner's desire to proceed with a bench trial because, in his professional opinion, "wasting the Court's time with a jury trial could increase the Defendant's sentence." The Michigan Court of Appeals denied relief on this claim. *Cochrane*, 2007 WL 2811540, at *5.

On direct appeal, the court of appeals rejected the petitioner's claim because the record showed that the trial judge had advised the petitioner of his right to a jury trial. The trial court record discloses that the petitioner understood the pending charges against him and acknowledged to the judge that giving up his right to a jury trial meant that the judge would be the only decision maker at trial. *Cochrane*, 2007 WL 2811540, at *5. The state court of appeals also found that trial counsel's advice that the trial court judge would be less favorable at sentencing if the petitioner was

-11-

convicted following a jury trial did not render the waiver involuntary. That decision accords with federal law. The fact that the petitioner waived his right to a jury trial because he believed that the judge might be more lenient on him at sentencing does not render a waiver invalid. A criminal defendant may have sound tactical reasons for relinquishing a jury trial in favor of a bench trial. *See Adams v. United States e. rel. McCann*, 317 U.S. 269, 278 (1942) ("And since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury."). On habeas review of a state court conviction, a federal court is "required to give a high measure of deference to the state court's findings concerning [a] jury waiver." *Spytma,* 313 F.3d at 371.

The petitioner further claims that his waiver was involuntary because the trial court judge did not ask him whether any threats or promises had been made to get him to relinquish his right to a jury trial. The state court of appeals rejected the petitioner's argument because Michigan law does not require a trial court to inquire about whether the defendant was threatened or promised anything in exchange for waiving his jury trial right. *Cochrane*, 2007 WL 2811540, at *5 (citing *People v. Shields*, 200 Mich. App 554, 560-561; 504 N.W.2d 711 (1993)). That conclusion was not contrary to applicable federal law.

This Court concludes that the state court's determination that the petitioner knowingly and voluntarily waived his right to a jury trial was not an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts. In this case, the petitioner "took a litigation risk and lost; these facts alone do not create a constitutional violation." *Sowell*, 372 F.3d at 835. The petitioner is not entitled to habeas relief on his second claim.

-12-

C.

The petitioner contends that the trial court improperly departed above the sentencing guidelines range by using factors that had not been proven beyond a reasonable doubt or conceded to by the petitioner. The petitioner contends that his sentence was increased based upon facts neither proven to a jury beyond a reasonable doubt nor admitted by him. The petitioner argues, therefore, that the trial court judge violated his Sixth Amendment right to a trial by jury by using facts to score his sentencing guidelines that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), support his position. However, the Sixth Circuit has held that *Blakely* does not apply to judicial fact-finding under Michigan's indeterminate sentencing scheme. *Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *see also Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States*[, 536 U.S. 545, 563-68 (2002)] tells us that *Apprendi*'s rule does not apply to judicial fact finding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by those decisions. The petitioner is not entitled to habeas relief on his sentencing claim.

III.

For the reasons stated, the Court concludes that the state court decision in this case was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts of the case. The petitioner has not established that he is presently in custody in violation of the Constitution of the United States.

-13-

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 19, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 19, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL